IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BILL H. APANA, as Personal Representative of the Estate of CORRINE APANA, | ) CIVIL NO.  06-00653 JMS/LEK ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) AMENDED ORDER GRANTING IN ) PART AND DENYING IN PART ) DEFENDANT'S MOTION FOR |
| TIG INSURANCE COMPANY; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATION 1-10, | ) SUMMARY JUDGMENT ) ) |
| Defendants. | ) ) |
| _____ | ) |

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This diversity case raises three questions relating to Hawaii state insurance law: (1) whether the Defendant, TIG Insurance Company ("TIG"), had a duty to defend against Plaintiff Bill Apana's ("Plaintiff") claims where courts nationwide are divided on the applicable legal issue and the Hawaii Supreme Court and Hawaii Intermediate Court of Appeals have not addressed the topic; (2) whether a Total Pollution Exclusion Endorsement precludes coverage under state law where an individual inhaled noxious fumes released when a plumber used chemicals to treat a clogged drain; and (3) whether TIG's refusal to tender a

defense and its denial of coverage constituted bad faith. The court finds that TIG had a duty to defend but that TIG was not required to indemnify based on the Total Pollution Exclusion Endorsement. The court also finds that TIG did not act in bad faith when denying coverage but that it is premature to ascertain whether TIG acted in bad faith when declining to defend. The court therefore GRANTS IN PART AND DENIES IN PART TIG's Motion for Summary Judgment.

## II.  BACKGROUND

### A.  Factual Background

On March 21, 2002, Corrine Apana ("Corrine") was working at the Wal-Mart shopping center in the city of Lihue, Hawaii, located on the island of Kauai. Dennis Marugame ("Marugame"), a plumber employed by H. Marugame Plumbers, Inc. ("HMP, Inc."), was also at Wal-Mart, performing plumbing work on a maintenance drain near where Corrine was working. Marugame poured an extremely strong drain cleaner down the maintenance drain, releasing noxious fumes which Corrine inhaled. Corrine, who according to counsel was severely diabetic, began bleeding from the nose and the mouth. The Kauai police and fire departments ordered the Wal-Mart to be evacuated for two hours.

Bill and Corrine Apana (collectively, "Apanas") filed suit against Marugame and HMP, Inc. TIG's Mot. for Summ. J. Ex. A. HMP, Inc., was the

named insured under a general commercial insurance liability policy issued by TIG for the period from February 19, 2002 to February 19, 2003. TIG's Mot. for Summ. J. Ex. B (hereinafter "Policy"). The Policy provided that TIG

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [TIG] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [TIG] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [TIG] may, at [its] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Policy § I(A)(1)(a). The Policy contained a "Total Pollution Exclusion Endorsement" which provided:[1]

> This insurance does not apply to:
> f. Pollution
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

The Policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste." Policy § V(15).

Marugame and HMP, Inc., tendered requests for defense and

---

[1] According to TIG's counsel, this Total Pollution Exclusion Endorsement is standard policy language employed by various insurance companies nationally.

indemnity under the Policy to TIG. TIG denied coverage based on the Total Pollution Exclusion Endorsement in the Policy. TIG also declined to tender a defense on behalf of Marugame and HMP, Inc.

The state law claims against Marugame and HMP, Inc., were submitted to arbitration and the Apanas were awarded approximately $90,000. Corrine later passed away, apparently from unrelated causes, and Bill Apana was appointed personal representative of her estate.

**B.     Procedural Background**

The Apanas filed their original Complaint for Corrine's injuries against Marugame and HMP, Inc. in the State of Hawaii Circuit Court of the Fifth Circuit on July 2, 2003. *See* TIG's Mot. for Summ. J. Ex. A. Following the arbitration award against Marugame and HMP, Inc. and an assignment of its interests by HMP, Inc., Plaintiff filed the present Complaint in the State of Hawaii Circuit Court of the Fifth Circuit on November 13, 2006, alleging that TIG had a duty to defend Marugame and HMP, Inc.; that Corrine's injuries were covered under the Policy; and that TIG acted in bad faith when it denied coverage. On December 7, 2006, TIG removed the matter to this court.

TIG filed its Motion for Summary Judgment on June 20, 2007. Plaintiff filed his Memorandum in Opposition on July 20, 2007. TIG filed its

Reply on July 26, 2007. The court heard oral arguments on August 6, 2007.

### III. STANDARDS OF REVIEW

**A.   Summary Judgment Standard**

A party is entitled to summary judgment where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court construes the evidence -- and any dispute regarding the existence of facts -- in favor of the party opposing the motion. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1086 (9th Cir. 2001). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, summary judgment will be mandated if the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

**B.   Diversity Cases Under 28 U.S.C. § 1332**

The court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332. Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity cases apply federal procedural rules and substantive state law. "In the absence of controlling state law, a 'federal court sitting in diversity

must use its own best judgment in predicting how the state's highest court would decide the case.'" *Tirona v. State Farm Mut. Auto Ins. Co.*, 812 F. Supp. 1083, 1085 (D. Haw. 1993) (citations omitted). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

## IV. ANALYSIS

### A. TIG Had A Duty to Defend

The Policy required TIG to defend Marugame and HMP, Inc., against suits seeking damages for bodily injury or property damage. Policy § I(A)(1)(a). However, TIG was not required to defend against suits alleging claims not themselves covered by the Policy. *Id.* The Hawaii Supreme Court recently explained an insurer's obligation to defend as

> broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage. In other words, the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.
> Accordingly, in connection with the issue of its duty to defend, [the insurer bears] the burden of proving that there is no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy. In other words, the insurer is required to prove that it would be *impossible* for the claimant to

> prevail against the insured in the underlying lawsuit on a claim covered by the policies.  Conversely, the insured's burden with respect to its motion for summary judgment is comparatively light, because it has merely to prove that a *possibility* of coverage exists.

*Tri-S Corp. v. Western World Ins. Co.*, 110 Haw. 473, 488, 135 P.2d 82, 97 (2006) (*quoting Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Haw. 398, 412-13, 992 P.2d 93, 107-08 (2000)) (brackets omitted; emphasis in original).  TIG's refusal to defend is evaluated in light of the information it had at the time it declined to defend Marugame and HMP, Inc. against the Apanas' original state claims.  *See Hawaiian Ins. & Guar. Co., Ltd. v. Blanco*, 72 Haw. 9, 17, 804 P.2d 876, 880 (1990), *overruled on other grounds by Dairy Rd. Partners*, 92 Haw. at 422-23, 992 P.2d at 116-17.

The court finds that the Apanas' original Complaint raised the possibility that Marugame and HMP, Inc. were entitled to indemnification and that TIG therefore had a duty to defend.  *See Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994).  There is a deep split among state courts regarding whether Total Pollution Exclusion Endorsements preclude coverage in cases of personal injury resulting from relatively isolated inhalation or exposure to pollutants or whether such clauses only preclude coverage in cases of "traditional" environmental pollution.  *See Firemen's Ins. Co.*

*v. Kline & Son Cement Repair*, 474 F. Supp. 2d 779, 792 nn.5-6 (E.D. Va. 2007) (listing various courts that have been divided on the issue, including courts within the same jurisdiction); *MacKinnon v. Truck Ins. Exchange*, 73 P.3d 1205, 1209 n.1-2 (Cal. 2003) (same).  As the California Supreme Court noted,

> [t]o say there is a lack of unanimity as to how [a pollution exclusion] clause should be interpreted is an understatement. Although the fragmentation of opinion defies strict categorization, courts are roughly divided into two camps.  One camp maintains that the exclusion applies only to traditional environmental pollution into the air, water, and soil, but generally not to all injuries involving the negligent use or handling of toxic substances that occurs in the normal course of business.  These courts generally find ambiguity in the wording of the pollution exclusion when it is applied to such negligence and interpret such ambiguity against the insurance company in favor of coverage.  The other camp maintains that the clause applies equally to negligence involving toxic substances and traditional environmental pollution, and that the clause is as unambiguous in excluding the former as the latter.

*MacKinnon*, 73 P.3d at 1208-09.  Neither the Hawaii Supreme Court nor the Hawaii Intermediate Court of Appeals has considered this issue.  While one other District Court Judge in the District of Hawaii has weighed in, that order is not binding precedent.  *See Allen v. Scottsdale Ins. Co.*, 307 F. Supp. 2d 1170 (D. Haw. 2004).

The question of whether the Total Pollution Exclusion Endorsement precluded Plaintiff's claims is thus an open question under Hawaii law and a

8

heavily-disputed question nationally.  "The mere fact that the answer[] to [this] question[] in this jurisdiction [was] not then and [is] not presently conclusively answered demonstrates that, based on the allegations in the underlying action, it was *possible* that [Marugame and HMP, Inc.] would be entitled to indemnification under [TIG's] polic[y]."  *Sentinel*, 76 Haw. at 290, 875 P.2d at 907; *accord Pac. Employers Ins. Co. v. Servco Pac., Inc.*, 273 F. Supp. 2d 1149, 1157 (D. Haw. 2003) ("More important for present purposes, Hawaii has not addressed this issue in a published opinion. . . . Given such a legal ambiguity . . . regarding the meaning of such an exclusion, there is a potential for coverage under Hawaii law and PEIC is required to defend Servco.").  TIG's Motion for Summary Judgment as to the duty to defend is thus DENIED.

**B.     TIG Did Not Have A Duty to Indemnify**

*Tri-S Corporation* also set forth the standard on a motion for summary judgment as to an insurer's duty to indemnify:

> With respect to an insurer's prayer for a declaration that it has no duty to indemnify the insured pursuant to the policy, it is not required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits.  Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, the insurer is required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policy and the consequent

9

entitlement to the entry of judgment as a matter of law.

*Tri-S Corp.*, 110 Haw. at 488, 135 P.2d at 97 (*quoting Dairy Rd.*, 92 Haw. at 412-13, 992 P.2d at 107-08) (brackets and emphasis omitted). TIG bears the burden of establishing that the Total Pollution Exclusion Endorsement applies. *Sentinel*, 76 Haw. at 297, 875 P.2d at 914.

The question before the court -- whether the Total Pollution Exclusion Endorsement precludes coverage of personal injuries resulting from fumes released when a plumber treated a clogged drain in an allegedly negligent manner -- is a question of law for the court. *See Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984) ("As a general rule, the construction and legal effect to be given a contract is a question of law.").[2]

Under Hawaii law, courts look at the language included within the four corners of the insurance policy to determine the scope of the insurer's duties. *See Sentinel*, 76 Haw. at 287, 875 P.2d at 904 (1994); *see also Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In the context of insurance coverage disputes, we must look to the language of the

---

[2] Plaintiff's counsel suggested during oral argument that there may be facts which might make summary judgment inappropriate. Plaintiff, however, failed to submit any such evidence on the record or file a motion pursuant to Federal Rule of Civil Procedure 56(f). Indeed, instead of filing a Counter Statement of Facts, Plaintiff accepted TIG's Statement of Facts. *See* Pl's. Acceptance of TIG's Concise Stmt. of Facts. Because the facts in this matter are not disputed, the only question remaining is one of contract construction.

insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations.").

The Hawaii Supreme Court has offered the following rules for interpreting provisions of insurance policies:

> [I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
> Nevertheless, adherence to the plain language and literal meaning of the insurance contract provisions is not without limitation.  We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Dairy Rd.*, 92 Haw. at 411-12, 992 P.2d at 106-07 (internal citations, quotation marks, brackets, and ellipses omitted); *Hawaiian Ins. & Guar. Co.*, 72 Haw. at 87-88, 807 P.2d at 1260 ("[W]e shall construe insurance policies according to their plain, ordinary, and accepted sense in common speech unless it appears that a different meaning was intended.  Moreover, this court has stated that it is committed to enforce 'the objectively reasonable expectations' of parties claiming

11

coverage under insurance contracts which are 'construed in accord with the reasonable expectations of a layperson.'" (Citations omitted)); *see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech."). A "court should look no further than the four corners of the document to determine whether an ambiguity exists." *State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999). A contract term is ambiguous only if it is capable of being reasonably understood in more than one way. *Cho Mark Oriental Food, Ltd. v. K & K Intl.*, 73 Haw. 509, 520, 836 P.2d 1057, 1063-64 (1992). "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language unambiguous." *State Farm Fire & Cas. Co.*, 90 Haw. at 324, 978 P.2d at 762.

      This court predicts that the Hawaii Supreme Court would likely find that the language of the Total Pollution Exclusion Endorsement is plain and unambiguous. The clause excludes from coverage bodily injury resulting from the discharge or release of "pollutants." The Policy defines "pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste." Policy § V(15). The noxious fumes

that Corrine inhaled, leading to her injuries, are a pollutant and are excluded from coverage under a plain, common, and ordinary understanding of the Total Pollution Exclusion Endorsement.[3]

Nothing in the language of the Total Pollution Exclusion Endorsement references or even impliedly limits the clause to instances of traditional environmental pollution or requires that the pollution cover an extended area. "'The court must respect the plain terms of the policy and not create ambiguity where none exists.'" *First Ins. Co. v. State*, 66 Haw. 413, 424, 665 P.2d 648, 655 (1983) (*quoting Crawford v. Ranger Ins.*, 653 F.2d 1248, 1250 (9th Cir. 1981)). The Total Pollution Exclusion Endorsement therefore excludes coverage for bodily injuries resulting from the contamination of the air and TIG was not required to indemnify Marugame and HMP, Inc. for Corrine's injuries. TIG's Motion for Summary Judgment as to its duty to indemnify is GRANTED.[4]

---

[3] Plaintiff's argument that the court's interpretation will lead to the exclusion of coverage for every mishap involving a solid, liquid, or gas is flawed. *See* Pl's. Mem. in Opp'n 11. A layperson's understanding of the term pollutant is "something that pollutes, especially a waste material that contaminates air, soil, or water." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004). Thus, the "actual or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants" requires an actual or threatened contamination of the air, soil, or water. As a result, not all bodily injuries involving a solid, liquid, or gas is excluded from coverage. For example, if a spilled container of chemicals leads Person A to slip and fall and Person B to become ill when the chemicals seep into her water supply, Person A's claim would be covered while Person B's claim would not.

[4] The court rejects TIG's alternate argument that the incident constituted traditional
(continued...)

13

## C. TIG Did Not Act In Bad Faith When Failing to Defend or Denying Coverage

Under Hawaii law, "an insurer may face liability under a bad faith tort action if it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy." *Best Place, Inc. v. Penn America Ins. Co.*, 82 Haw. 120, 132, 920 P.2d 334, 346 (1996) (citation and quotation signals omitted). The denial of a claim

> is not the *sine qua non* for an action for breach of the implied covenant of good faith and fair dealing. The implied covenant [of good faith] is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.

*Id.* (citations omitted). In Hawaii, a "reasonableness" standard governs bad faith claims. *Id.* at 133, 920 P.2d at 347 ("[T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages . . . ."). Thus,

> conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a

---

[4](...continued)
environmental pollution and should also be excluded on those grounds. The event underlying the Apanas' claims involved the isolated use of a drain cleaner resulting in an isolated injury. That the Kauai police and fire departments evacuated Wal-Mart for two hours does not suggest otherwise.

> policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith."

*Id.* (citations omitted).

While questions of the "reasonableness" of a party's action are usually inappropriate for adjudication on summary judgment, a "trial court is 'under a duty' to decide this question as a matter of law 'where the facts are undisputed or are susceptible of only one reasonable interpretation.'" *Wittig v. Allianz*, 112 Haw. 195, 200, 145 P.3d 738, 743 (2006) (citations omitted); *accord Government Employees Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1035 (D. Haw. 2001) (granting an insurance company's motion for summary judgment after finding that the insurance company acted reasonably and did not act in bad faith when denying coverage).

The court denies TIG's Motion for Summary Judgment with regards to Plaintiff's claim that TIG acted in bad faith when refusing to defend. There is insufficient information on the record as to whether TIG unreasonably refused to defend Marugame and HMP, Inc., in light of Hawaii's standard that an insurer has a duty to defend where there is a mere possibility or potential for coverage. *See also Pac. Employers Ins. Co.*, 273 F. Supp. 2d at 1158 ("Although the Court agrees with PEIC that there was a 'genuine dispute' as to coverage (and in fact

there remains a genuine dispute regarding the meaning of the qualified pollution exclusion for indemnity purposes), the Court finds that it is premature to absolve PEIC of all possible liability for bad faith at this stage of the proceedings.").

The court grants TIG's Motion for Summary Judgment with regards to Plaintiff's claim that it acted in bad faith when refusing to indemnify Marugame and HMP, Inc. TIG denied coverage based on an unsettled question of law and, based on this court's ruling, is not ultimately obligated to indemnify Marugame and HMP, Inc. TIG's decision to deny coverage was not unreasonable and did not constitute bad faith. *See Government Employees Ins. Co.*, 176 F. Supp. 2d at 1035 (finding no bad faith where insurance company facing unsettled question of law refused to indemnify and instead filed declaratory action); *Colonial Penn Ins. Co. v. First Ins. Co. of Hawaii*, 71 Haw. 42, 44, 780 P.2d 1112, 1114 (1989) ("We affirm the summary judgment with respect to the alleged bad faith denial of no-fault benefits because, as is obvious from the discussion of the remaining point, the question of who was liable to pay . . . was an open question of law, and there was obviously no bad faith on the part of First Insurance in litigating that issue."). TIG's Motion for Summary Judgment as to Plaintiff's claims that it acted in bad faith is thus GRANTED IN PART AND DENIED IN PART.

## V. **CONCLUSION**

The court finds that TIG had a duty to defend Marugame and HMP, Inc., in the original state action, but that TIG did not have a duty to indemnify Marugame and HMP, Inc., based on the Total Pollution Exclusion Clause. The court also finds that TIG's refusal to indemnify was not bad faith, but finds it is premature to ascertain whether TIG's refusal to defend was bad faith. The court thus GRANTS IN PART AND DENIES IN PART TIG's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 16, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Apana v. TIG Ins. Co.*, Civ. No. 06-00653 JMS/LEK, Amended Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment